DECISION
John Rocchio Corp. (Rocchio Corp.) is the Plaintiff and Defendant in the Counterclaim. Logville Pre-Cast, Inc. (Logville) is the Defendant, the Plaintiff in the Counterclaim, and the Third-Party Plaintiff. John Rocchio, Jr. (Rocchio) is the Third-Party Defendant.
 Facts and Travel
On or about June 12, 2003, Plaintiff and Defendant entered into a contract pursuant to which Defendant would produce pre-cast stone for the front facade of Rocchio's residence in return for $15,000, plus Rhode Island sales tax. There was to be a $2,000 deposit, a $2,000 payment when shop drawings were submitted, a $2,000 payment when samples were submitted and the balance payment of $4,000 upon delivery.
The $2,000 deposit was paid on June 12, 2003. The $2,000 payment for the shop drawings was paid on September 5, 2003. Mr. Rocchio testified that for the following two (2) to three (3) months, Defendant was to provide shop drawings which were required for both manufacture and construction. Mr. Rocchio stated that there were constant communications between Plaintiff and Defendant about the lack of drawings. He testified that he met and/or spoke with Defendant's draftsman on multiple occasions. *Page 2 
Mr. Rocchio testified that Defendant never asked for assistance. However, Plaintiff offered assistance and instructed its architect to work with, and assist, Defendant. The shop drawings were furnished in early September 2003 and were accepted. On September 5, 2003, Plaintiff sent Defendant a check for $2,000.
Mr. Rocchio testified that the next step was for Defendant to present color samples to Plaintiff for approval. As Defendant prepared samples, Mr. Rocchio would take them home, confer with his wife, and determine if they were a "match." Mr. Rocchio stated that he went to Defendant's place of business approximately three (3) times to look at samples. The ultimate goal was for Defendant to prepare a specific, desired color sample. That did not occur and, in early November 2003, Mr. Rocchio and a representative of Defendant had a spirited conversation during which, according to Mr. Rocchio, Mr. Rocchio said "I need my sample tomorrow" and Defendant's representative replied "You're not getting it tomorrow. No more contract. I'll send your money back."
Mr. Rocchio thereafter sought replacement samples. He stated that he could find no one locally who could supply them. No one was available; everyone was too busy. He found a company in Texas which suited his needs. Plaintiff entered into a contract with the Texas company pursuant to which he agreed to $23,853.48 to get the work done. That sum is $8,853.48 more than the contract with Defendant. The final product was delivered in April 2004. It is Plaintiff's claim that it incurred costs as follows:
 $8,853.48 — representing additional cost of contract
 3,500.00 — representing additional architectural costs
 2,000.00 — representing additional amount Defendant refused to return *Page 3 
$14,553.48 is the amount Plaintiff claims it is entitled to as a result of Defendant's alleged breach.
Mark Rogers (Mr. Rogers), President of Defendant, testified that his draftsman prepared and submitted two shop drawings which were approved by the Plaintiff's architect. Defendant's General Manager, John Marino, brought color samples to Plaintiff on approximately three (3) to five (5) occasions. He stated that the scenario always boiled down to this: Defendant would prepare color samples and Plaintiff would make dramatic changes. Then Defendant would have to start the process from the beginning and do variations on each color. This was the pattern and Defendant could never satisfy Plaintiff. Finally, Defendant simply did not want Plaintiff's business anymore and advised Plaintiff that it was severing the contract. Defendant refunded Plaintiff's deposit.
On or about September 21, 2003, Mr. Rocchio called Defendant in the morning and left a message. No one returned Mr. Rocchio's call and Mr. Rogers concedes that that was due to a snafu on Defendant's part. Mr. Rogers testified that Mr. Rocchio called and left a message canceling the order. Plaintiff was very upset. On September 24, 2003, Mr. Rogers and Mr. Marino met with Mr. Rocchio, who wanted his money back.
Mr. Rogers described at length the process by which color samples are prepared. He stated that Mr. Rocchio never brought any particular sample of brick or color which he wanted Defendant to match. On Plaintiff's behalf, Defendant worked with shades from one end of the color spectrum to the other; from white to black and all shades in between. Defendant made at least one hundred (100) color variations of samples, none of which was satisfactory to Plaintiff. Mr. Rocchio changed his mind about colors all the time. Sometimes the change was in terms of shade; sometimes the change was to another color altogether. *Page 4 
Mr. Rogers testified that there was never a conversation about Plaintiff incurring additional architectural costs to "assist" Defendant. After describing the process of preparing the samples, and the labor involved in doing so, Mr. Rogers estimated the additional cost to Defendant to be 15%-20%, the cost of the total job, approximately $2,500.
Mr. Rogers testified that, to the extent there was any delay in the process, that delay was due to Plaintiff's indecisiveness regarding color selection. He stated that Mr. Rocchio was well-known in the construction field and he (Mr. Rogers) would have done virtually anything to make Mr. Rocchio happy because he would want his business again. Mr. Rogers absolutely denied that the relationship ended as described by Mr. Rocchio. Rather, the point arrived when Mr. Rogers just wanted Mr. Rocchio "out of my life."
Relative to Plaintiff's subsequently contracting with a Texas firm, Mr. Rogers testified that Plaintiff could have utilized a number of local entities and that the Texas system, for a variety of reasons, is more costly.
 Conclusion
The business relationship between the parties collapsed because Plaintiff was consistently indecisive, Defendant did yeoman's work trying to satisfy him and, ultimately, both sides lost patience with one another. Mr. Rocchio's action made it impossible for Defendant to fulfill its obligations under the contract.
Defendant's version of events simply rings true. The Court finds the testimony of Messrs. Rogers and Marino most credible. The Court finds credible Messrs. Rogers and Marino's testimony that, while Defendant and Plaintiff's architect, Arris Design, Inc. (Arris) were free to discuss the project as needed, there was never any agreement by which Defendant would reimburse Arris for its services. *Page 5 
The Court finds credible the articulated frustration of Messrs. Rogers and Marino concerning Mr. Rocchio's inability to select, or constant delays in selecting, the color samples. The Court also notes, and believes, the frustration described by Plaintiff in not concluding this project. However, the Court concludes that Defendant's actions did not cause the collapse of this contract. There was no breach by Defendant. The Defendant did all it could do and did it diligently. Plaintiff could not be satisfied despite all Defendant's best efforts. The business relationship ended through no fault of Defendant.
Therefore, Plaintiff's demand for $8,853.48, representing the additional cost of the Texas contract; and the $3,500 representing architectural costs are not compensable. Nor is the $2,000 paid for shop drawings. That work was done by Defendant and accepted and paid for by Plaintiff. It need not be reimbursed by Defendant.
Relative to Defendant's claims, namely: $3,500 for production costs (color samples), $2,000 for cost of shop drawings, $3,00 for lost profits and $1,500 for special mold, the Court finds Defendant is not entitled to such reimbursements. These costs are the price of doing business. Further, none of these figures was supported by substantive evidence.
 Defendant will prepare the appropriate Order. *Page 1